UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD J. GLAIR,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>CITY OF LOS ANGELES, et al.<br><br>　　　　Defendants. | NO. CV 13-8946-DDP (AGR)<br><br>ORDER ACCEPTING FINDINGS AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE AS TO (1) REPORT DATED DECEMBER 4, 2019; AND (2) REPORT DATED MAY 31, 2019 |

Pursuant to 28 U.S.C. § 636, the Court has reviewed the complaint, records on file, the Report and Recommendation of the United States Magistrate Judge dated December 4, 2019 ("Report") and the Objections. Further, the Court has engaged in *de novo* review of those portions of the Report to which Plaintiff has objected.

**I.　DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT (Dkt. Nos. 193-194)**

The Court accepts the Report's findings and recommendations.

Defendants moved for partial summary judgment only on Federal Claims 6, 9 and 10.

**A.　Claim 6 (Failure to Train)**

Plaintiff contends that the City and Defendant Incontro failed to train officers (1) regarding what constitutes a valid consent to a search and (2) that the pointing of guns at non-suspects is not permitted. (Report at 8.) The Report recommended that

partial summary judgment be granted as to the consent portion and denied as to the gun portion.

The Report addressed the issue of training (a) when the officers came up the driveway to Plaintiff's front door and (b) when the officers entered Plaintiff's back yard and house. With respect to (a), Defendants submitted into evidence the LAPD training regarding the legal principles governing warrantless entry into a driveway and front yard. The Report found that Plaintiff failed to identify any deficiency in the training. (Report at 9.)

Plaintiff's objections again do not identify any deficiency in the training materials. Plaintiff merely argues that the failure to train is "obvious" under *Florida v. Jardines*, 569 U.S. 1 (2013). (Obj. at 7.) The Supreme Court stated, in *Jardines*, that "'the knocker on the front door is treated as an invitation or license to attempt an entry.'" *Id.* at 8 (citation omitted). "This implicit license typically permits the visitor to approach the home by the front path, knock promptly, wait briefly to be received, and then (absent invitation to linger longer) leave." *Id.* "Thus, a police officer not armed with a warrant may approach a home and knock, precisely because that is 'no more than any private citizen might do.'" *Id.* (citation omitted). Thus, contrary to Plaintiff's interpretation of *Jardines* (Obj. at 7), defense counsel's contention at oral argument that the officers had implied consent to walk to the front door and knock is completely consistent with *Jardines*. The Court did not indicate that training on this point was necessary. "Complying with the terms of that traditional invitation does not require fine-grained legal knowledge; it is generally managed without incident by the Nation's Girl Scouts and trick-or-treaters." *Id.* (footnote omitted).[1]

With respect to the officers' subsequent entry into the backyard and home, the Report noted a dispute of fact as to whether Plaintiff consented. Plaintiff stated that

---

[1] The Supreme Court held, in *Jardines*, that police use of a drug-sniffing dog on the front porch to investigate the contents of the home (marijuana) constituted a search under the Fourth Amendment. 569 U.S. at 11-12. That holding is not implicated in this case.

officers never asked for consent and he did not give consent. (Report at 10 (citing Third Am. Compl. ¶¶ 32, 36; Glair Decl. ¶ 17(1)).) Assuming Plaintiff's version is believed, the Report found that Plaintiff had not created a genuine issue of material fact as to the requisite causal connection between a failure to train and the alleged Fourth Amendment violation. No specific training about what constitutes consent was necessary for the officers to know that Plaintiff had not consented if, as Plaintiff contends, officers did not ask for consent and he did not give it.[2] (Report at 10-11 (citing *Flores v. Cnty. of Los Angeles*, 758 F.3d at 1154, 1155, 1159-60 (9th Cir. 2014)).)

In his objections, Plaintiff cites *United States v. Shaibu*, 920 F.2d 1423 (9th Cir. 1990), but that case reinforces the Report's observation that Plaintiff's version of the facts, if believed, would preclude consent. In *Shaibu*, there was "no contention that the police expressly or impliedly asked consent to enter" or that Shaibu expressly consented. Shaibu "opened the door not to let the police enter, but only for himself to step out of the apartment to meet visitors outside rather than inside." "To infer consent in this case is only a conjecture and would exceed the scope of any recognized exception to the Fourth Amendment's bar to warrantless entry of the home." *Id.* at 1427. "That the police would so enter, without request, creates an impression of authority to do so." "[W]e interpret failure to object to the police officer's thrusting himself into Shaibu's apartment as more likely suggesting submission to authority than implied or voluntary consent." The prosecution cannot show consent merely from a criminal defendant's failure to object to the entry. *Id.*

Nothing in *Shaibu* alters the Report's conclusion that Plaintiff has not created a genuine issue of material fact as to the requisite causal connection between a failure to train and the Fourth Amendment violation he alleges.

---

[2] By contrast, Defendants claim they asked for his consent and Plaintiff gave his consent. (Pultz Depo. at 24:3-11, 19-25, 25:1-2, 6-7, 14-20, 24-25, 26:1-5.)

**B.  Claim 9  (Supervisory Liability)**

As the Report noted, Plaintiff alleges that Defendants Incontro (Commander of the Metropolitan Division), McCarty (detective in Force Investigation Division), Doe 5 (Lt. Heard, SWAT Division supervisor) and Doe 6 (H. Miller, K9 Division supervisor) were on the scene for three hours, knew that officers were going house to house in pursuit of the suspect, and failed to obtain a warrant or notify officers that "exigent circumstances no longer existed so, absent consent, [a] warrant had to be obtained." (Report at 13 (quoting Third Am. Compl. ¶ 103; *see also Id.* ¶ 17).)

The Report recommends summary judgment on Claim 9 because Plaintiff has not created a genuine issue of fact as to the Defendants' supervisory liability.  The parties agree in this case that exigent circumstances did not exist and that a warrant was necessary absent Plaintiff's consent.  (Report at 13-14; Pultz Depo. at 85:15-17, 85:18-86:9)[3]  The genuine dispute of material fact is whether there was consent under the circumstances of this case.  Apparently based on his misreading of *Jardines*, Plaintiff's objections cite the testimony of Officer Pultz that he was trained, in accordance with the law, that when an armed shooter is at large, there is a risk to the public and a perimeter is established, an officer can go into the curtilage of a home.  (Obj. at 9; Pultz Depo. at 104:1-21.)  Pultz's testimony does not create a genuine issue of supervisory liability.  An officer without a search warrant may "approach the home by the front path, knock promptly, wait briefly to be received, and then (absent invitation to linger longer) leave."  *Jardines*, 569 U.S. at 8.  Plaintiff argues that the supervisors have effectively said "just do whatever you want, say whatever you want, make up stuff if you want" but he does not cite evidence that

---

[3]  Pultz testified that if Plaintiff had refused consent, they may have locked down the residence and asked for search warrant, and maybe asked Plaintiff more questions or contact the supervisor on scene. (Pultz Depo. at 85:15-17, 85:18-86:9.)  The only circumstance under which they would have opened the door anyway was "some sort of duress coming from inside, screaming, yelling, maybe a shot fired inside." (*Id.* at 98:21-25.)

would create a genuine issue of material fact. Plaintiff's remaining objections are without merit and do not change the outcome.

### C. Claim 10 (*Monell* Claim)

Plaintiff's objections complain that Defendants have not met their initial burden as the moving party to show the absence of a genuine issue of material fact. The Report found that Defendants satisfied their burden by submitting evidence showing the City trains LAPD officers that they are required to obtain a warrant before entering a home unless they obtain consent or unless there are exigent circumstances. (Report at 15.) Defendants presented evidence, if it is believed, that in this case an officer requested and Plaintiff gave his consent. The Report found no evidence from which the court could infer a policy, custom or practice of entering homes without a warrant or consent or exigent circumstances. (*Id.* at 16.) The Report further found no evidence of the requisite causal link between any policy, custom or practice and Plaintiff's alleged constitutional violation. (*Id.*) In his objections, Plaintiff contends that it is Defendants' burden to prove that their custom and practice conforms to their training, presumably beyond the facts of this case. Plaintiff cites no authority for his contention. It is his burden to create a genuine issue of fact, which he has not done.

### D. Qualified Immunity

Although Plaintiff objects to the Report's recommendation, the Report found it unnecessary to address qualified immunity as to any claim dismissed on summary judgment and recommended denial of qualified immunity without prejudice as to the failure to train claim regarding pointing guns at a non-suspect.

### E. Order

IT IS ORDERED that Defendants' motion for partial summary judgment is GRANTED IN PART AND DENIED IN PART as follows:

(1) Defendants' motion for summary judgment is granted in favor of the City of Los Angeles, Beck, Incontro, McCarty and Does 5 and 6 on Claims 9, 10, and the

portion of Claim 6 based on failure to train regarding consent; and

(2) Defendants' motion for summary judgment is denied on the portion of Claim 6 based on failure to train regarding pointing guns at non-suspects.

## II. PLAINTIFF'S MOTION FOR LEAVE TO FILE A FOURTH AMENDED COMPLAINT  (Dkt. No. 173-176)

Pursuant to 28 U.S.C. § 636, the Court has reviewed the complaint, records on file, the Report and Recommendation of the United States Magistrate Judge dated May 31, 2019 ("Report") and the Objections.  Further, the Court has engaged in a *de novo* review of those portions of the Report to which Plaintiff has objected.

The Court accepts the Report's findings and recommendations.  The Report recommends that the Court deny Plaintiff's motion for leave to file the Fourth Amended Complaint, with the proviso that denial of Plaintiff's motion for leave to substitute Lt. Heard for Doe 5 in Federal Claim 9 would be without prejudice to Plaintiff's ability to renew the motion if Federal Claim 9 survived Defendants' motion for partial summary judgment.  Because the Court has determined that summary judgment is appropriate for Federal Claim 9, Plaintiff's motion for leave to file a Fourth Amended Complaint is denied.

Plaintiff objects to the Report's conclusion that the addition of J. Miller and N. Huynh as defendants in Federal Claim 1, Federal Claim 2 and the state law claims would be futile.  The Report found that Plaintiff failed to allege any factual basis for liability for J. Miller or N. Huynh, who were K-9 officers.  "Officers may not be held liable merely for being present at the scene of a constitutional violation or for being a member of the same operational unit as a wrongdoer." *Felarca v. Birgeneau*, 891 F.3d 809, 820 (9th Cir. 2018).  In his objections, Plaintiff does not point to any factual allegations that J. Miller and N. Huynh did anything, or failed to do anything, that could form the basis of liability under Federal Claim 1, Federal Claim 2 or the state law claims.  J. Miller and N. Huynh are not alleged to have participated in the allegedly unconstitutional search of his home and detention conducted by

Defendants Pultz and Sandell.  J. Miller and N. Huynh are alleged to have been present in the backyard or at the back door.[4]  (Obj. at 4.)  Plaintiff argues any deficiency can be cured by amendment but does not suggest any additional facts that could form the basis for liability for J. Miller and N. Huynh.  Plaintiff cites an admission that a dog alerted on the suspect's clothing found near the rear of his residence.  However, Plaintiff does not explain how that admission can be the basis of liability for J. Miller and N. Huynh.  Plaintiff has had ample time to discover any such facts.  This case has been pending since December 4, 2013, discovery closed on April 29, 2019 and summary judgment proceedings have concluded.

Plaintiff also objects to the Report's conclusion that the addition of H. Miller as a defendant in Federal Claim 9[5] would be futile because Plaintiff does not allege any factual basis for supervisory liability.  Although Plaintiff alleges H. Miller was the supervisor of the K-9 division, Plaintiff does not allege any facts indicating he was the supervisor over a K-9 officer who was somehow liable in the illegal search and detention.  *See Felarca*, 891 F.3d at 821.  Although Plaintiff again argues that any deficiency can be cured, Plaintiff's objections do not suggest any additional facts that would satisfy the legal standards for supervisory liability previously explained to Plaintiff in the Report and Recommendation on Defendants' motion to dismiss the Third Amended Complaint.  (*See* Report, Dkt. No. 155 at 16.)

Plaintiff does not appear to dispute the Report's observation that the proposed Fourth Amended Complaint contains mistakes and would have to be amended before it could be filed.  The Report noted that the proposed Fourth Amended Complaint appeared to add a federal cause of action that was inchoate and stopped in mid-

---

[4] Plaintiff does not object to the Report's recommendation that the Court deny Plaintiff's attempt to add a sixth state law claim for civil trespass.  (Obj. at 6.)

[5] Plaintiff's objections refer to Federal Claim 4 in his proposed Fourth Amended Complaint, which correlates to Federal Claim 9 in the operative Third Amended Complaint.

sentence: Defendants McCarty, Incontro, Heard, H. Miller and the City of Los Angeles "failed to train their employees as to when to obtain search." (Dkt. No. 173-1 at 12:28.) Plaintiff contends this deficiency can be cured by adding the word "warrants." Even so, Plaintiff concedes that this claim "has been in every complaint and defendants have a summary judgment motion pending on it." (Obj. at 6.) The proposed Fourth Amended Complaint would therefore be unnecessary for this claim.

The proposed Fourth Amended Complaint is also unnecessary to add Incontro as a defendant. The operative Third Amended Complaint names Incontro as a defendant in Federal Claim 9. The Report observed that the proposed Fourth Amended Complaint deleted Incontro as a defendant in Federal Claim 9, but Plaintiff later filed a notice of corrections that stated Incontro should be added as a defendant without specifying a cause of action. (Report at 7.)

Plaintiff's objections add to the confusion by stating that the notice of corrections to the proposed Fourth Amended Complaint should itself be corrected. Plaintiff argues that Lopez should now be added as a defendant. (Obj. at 7.) Lopez was previously dismissed from this case. (Order, Dkt. No. 158.) Plaintiff contends that Lopez and others should be defendants in a claim based on failure to train officers that pointing a weapon at a nonsuspect is per se use of excessive force. However, that failure to train claim is in the operative Third Amended Complaint and not in the proposed Fourth Amended Complaint.

IT IS ORDERED that Plaintiff's motion for leave to file the Fourth Amended Complaint is DENIED and Plaintiff's motion for leave to substitute Lt. Heard for Doe 5 in Federal Claim 9 is DENIED.

DATED: August 9, 2021

DEAN D. PREGERSON
United States District Judge